UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY CROSS,

          Plaintiff(s),         CASE NUMBER: 06-11825
                                        HONORABLE VICTORIA A. ROBERTS

v.

CITY OF DETROIT, et al.,

          Defendant(s).
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendant City of Detroit's Motion for Summary Judgment. For the reasons stated below, Defendant's motion is **GRANTED**.

**II.    BACKGROUND**

Plaintiff Danny Cross brings this 42 U.S.C. §1983 action against the City of Detroit and ten unnamed "John Doe" police officers. Plaintiff alleges that his Fourth Amendment rights were violated by unidentified Detroit Police officers on five occasions: April 17, 2003, December 14, 2003, May 2004, August 2004, and May 2005.

On April 17, 2003, Plaintiff alleges that three Detroit Police officers, who were not wearing uniforms and were in an unmarked vehicle, pulled his vehicle over at a gas station. The officers allegedly drew their weapons and ordered Plaintiff to stick his hands out of the car window. The officers ordered Plaintiff out of his car and searched

1

him and the car. Plaintiff was not handcuffed. After 20 to 25 minutes, the officers returned Plaintiff's identification and left without explanation.

On December 14, 2003, Plaintiff and three passengers stopped at a different gas station. The passengers went into the station's store and Plaintiff stayed outside. While he was standing at the pump near the car he was driving, Plaintiff says a Detroit Police officer who was not in uniform and was driving an unmarked vehicle approached him from behind. The officer allegedly pushed Plaintiff against one of the pumps and requested identification. When the officer took his identification, a second officer grabbed him by the collar and took Plaintiff to the rear of the car. The second officer then searched Plaintiff while the other searched his car. During the search, one of the officers asked Plaintiff "where is the dope?" Def. Exh. A at p. 64. After detaining Plaintiff for 45 minutes, the officers left without explanation. Within an hour of the incident, Plaintiff said he experienced pain and swelling in his elbow.

In May 2004, Plaintiff says his neighbor told him that a Detroit Police officer entered onto his (Plaintiff's) property in Detroit while Plaintiff was not home. The officer searched an unlocked car parked in Plaintiff's driveway and left without explanation. He does not know whether the officer had a warrant.

On August 12, 2004, Plaintiff says two Detroit Police officers knocked loudly on his front door at 3:30 a.m. By the time Plaintiff reached the door, the officers were standing at their marked patrol car which was parked on the street in front of the house. When Plaintiff inquired about their presence, he says they told him they received a call that there was a problem at the house. Plaintiff said there was no problem and the officers left. The entire exchange lasted 15 to 20 seconds. Plaintiff characterizes this

incident as harassment.

In May 2005, Plaintiff says he was driving at or below the speed limit on Livernois Avenue in Detroit when a Detroit Police officer in a marked car (apparently driving in the opposite direction) passed him. The officer subsequently made a u-turn and pulled Plaintiff over. The officer accused Plaintiff of running a red light and speeding. After reviewing Plaintiff's identification, the officer ordered Plaintiff out of his vehicle and questioned him further. However, after detaining Plaintiff for 20 minutes, the officer let Plaintiff go without a ticket.

Plaintiff did not get the names or badge numbers of any of the officers involved in these alleged incidents and he never filed a citizen's complaint. Defendant says it has no record of any of the incidents and, therefore, denies that they occurred.

There was an additional incident Plaintiff says occurred during the pendency of this action which he did report. Plaintiff filed a citizens complaint on August 22, 2007 against four Detroit Police officers he says conducted illegal searches at his home. Plaintiff and witnesses state that Plaintiff was outside in front of his home on August 22nd entertaining two visitors when four plainclothes officers pulled up in two unmarked vehicles. Plaintiff says the officers searched him, his visitors, and cars on his property. Plaintiff was not charged or ticketed, but he says the officers threatened to arrest him for disorderly conduct and to tow the vehicles if he did not reveal their owners.

The Board of Police Commissioners investigated Plaintiff's complaint. On December 7, 2007, it advised Plaintiff that no disciplinary action would be taken against the officers because Plaintiff's allegations regarding the officers' demeanor and use of force was not sustained (*i.e.*, witness statements conflict and/or there was not enough

trustworthy evidence to support the complaint) and they were exonerated (*i.e.*, found to have acted appropriately) with regard to procedure and the searches. *See* Pl. Appx., Exh. B. Plaintiff, however, questions the validity of the investigation because his two visitors and six neighbors, some of whom were outside at the time, were never contacted.

Plaintiff also points out that a number of citizen complaints and lawsuits have been filed against Defendant and Detroit Police officers. Between 1997 and 2004, 8,833 citizen complaints were filed against Detroit Police officers for a variety of alleged civil rights violations. Pl. Supp. Br. at Exh. B, Interrog. 3. Between April 1, 2002 and April 1, 2007, 46 citizen complaints alleging harassment or an impropriety in the use of force or arrest and 13 complaints alleging improper searches were "sustained" *(i.e.*, deemed to "more likely than not" have merit) after internal investigation. Pl. Supp. br. at Exh. F; Pl. Appx. at Exhs. B, F.

Between April 1, 2002 and April 1, 2007, 162 lawsuits were filed against Defendant and/or Detroit Police officers alleging conduct within the scope of Plaintiff's claims. In June 2003, the United States filed suit against the City of Detroit and the Detroit Police Department ("DPD") and alleged that Detroit Police officers engaged in a pattern or practice of subjecting individuals to excessive force, false arrests, illegal detentions, and unconstitutional conditions of confinement. The United States further alleged, *inter alia*, that the City and DPD failed to investigate alleged misconduct or discipline guilty officers. In July 2003, without admitting liability or the allegations in the Complaint, the City and DPD entered into two Consent Judgments in which they agreed to implement policies in a number of areas addressed in the complaint, including use of

4

force, arrests, and detentions. A monitor was appointed to keep the Court apprised of the City and DPD's progress. The case is still open.

Finally, without offering specifics, Plaintiff alludes to prior lawsuits he filed against Defendant based on similar allegations.

In Counts I through V of his First Amended Complaint, Plaintiff alleges that the ten "John Doe" officers deprived him of his Fourth Amendment rights in violation of 42 U.S.C. §1983. The remaining counts (VI through VIII) are alleged against Defendant City of Detroit. In Count VI, Plaintiff alleges that Defendant has a policy or custom of supporting Detroit Police officers' violations of citizens' right to privacy, freedom from unreasonable search and seizure, and freedom from excessive force. In Count VII, Plaintiff alleges Defendant was aware that officers were trespassing on private property and illegally conducting property and automobile searches but failed to perform supervisory oversight to prevent these practices. And, in Count VIII, Plaintiff alleges that Defendant has a custom or practice that restricts his ability to engage in interstate travel without harassment.

Defendant only requests summary judgment on Counts VI through VIII.

## III. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the

essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the

nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

**IV.    APPLICABLE LAW AND ANALYSIS**

    **A.    Counts VI and VII--Illegal Search and Seizures**

"To state a cause of action under §1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law." *Spadafore v Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To prevail in a §1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)(*citing Monell v Dep't of Social Services*, 436 U.S. 658, 694 (1978)). A municipality cannot be held vicariously liable under §1983 on a *respondeat superior* theory. *Monell*, 436 U.S. at 691.

Municipal liability will only attach if "the plaintiff can establish that an officially executed policy, or the toleration of a custom . . . causes, or results in the deprivation of a constitutionally protected right." *Doe v Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). A plaintiff must show that "the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." *Powers v Hamilton County Public Defender Com'n*, 501 F.3d 592, 607 (6th Cir. 2007). When as here, municipal liability is based on an "inaction theory," where it is alleged the

7

municipality has an unwritten but entrenched policy of tolerating federal rights violations, the plaintiff must show:

> (1) the existence of a clear and persistent pattern of [illegal activity];
>
> (2) notice or constructive notice on the part of the [defendant];
>
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas*, 398 F.3d at 429.

Plaintiff alleges that Detroit Police officers perpetually engaged in warrantless detentions, traffic stops, and searches (of person and property) without probable cause, and that Defendant tacitly condoned this practice by failing to properly investigate complaints or discipline officers against whom complaints were substantiated. In support of this claim, Plaintiff relies upon: 1) his testimony about encounters between April 2003 and May 2005; 2) citizen complaints and lawsuits filed against Detroit Police officers and the City of Detroit; 3) prior lawsuits Plaintiff filed on similar grounds; and 4) additional encounters Plaintiff claims he had before and after those on which his suit is based. Even when construed in a light most favorable to Plaintiff, this evidence is insufficient to meet his burden on summary judgment because Plaintiff failed to establish a "clear and consistent pattern of illegal activity" and/or that Defendant had actual or constructive notice of illegal conduct.

Plaintiff first bases his claim of a policy or custom of inaction on his five alleged encounters between April 2003 and May 2005 in which unidentified Detroit Police

8

officers detained and searched him and/or his property without a warrant or probable cause. In a supplemental affidavit, Plaintiff also recounts eleven similar incidents between April 1994 and August 2001. Pl. Supp. br. at Exh. M. Plaintiff, however, admits he did not report the incidents alleged in his Complaint, and there is no evidence he reported the incidents recounted in his affidavit. Therefore, even if the multiple instances Plaintiff cites is sufficient to establish a pattern of illegal activity, he does not present any evidence Defendant had actual or constructive notice of the officers' alleged behavior.

Plaintiff next cites the citizen complaints and lawsuits filed against Defendant and Detroit Police officers. But, there is no evidence regarding the facts underlying any of the citizen complaints or lawsuits (including the suits brought by Plaintiff and the United States). There is no evidence regarding how many of the lawsuits were found or admitted to be meritorious. Defendant says it does not track whether or what disciplinary actions were taken as a result of those suits. And, there are no records for the majority of the "sustained" citizen complaints; the evidence presented only shows the disposition of seven complaints--one dismissal, two suspensions, two administrative closures, one reprimand, and one open case. Pl. Supp. br. at Exh. F.

Plaintiff, nevertheless, contends the complaints, lawsuits, Consent Judgments, and Defendant's failure to impose discipline in all but three of the sustained citizen complaints are evidence of a pattern of illegal conduct, that Defendant was on notice of the illegal conduct, and that Defendant tolerated the behavior. There is no evidence to support the claim.

First, there is no evidence discipline was only imposed on three occasions,

because the records submitted only show the action taken in seven complaints. What occurred in the remaining cases is unknown.

Second, the mere number of prior lawsuits or citizen complaints is insufficient to show a municipal policy or custom of condoning illegal behavior like that alleged by Plaintiff where there is no evidence of how the number of complaints filed against Defendant compares with the number of complaints filed in similarly sized cities, or how the facts underlying the prior complaints compare with the instant case. *See Thomas*, 398 F.3d at 431-432 (rejecting expert opinion that police department had unwritten policy of condoning excessive force based solely on the number of prior complaints; the court found such data meaningless without evidence showing what a normal number of complaints would be); *Marvin v City of Taylor*, 2006 W.L. 1779394, *9 (E.D. Mich. 2006)(number of civil rights complaints filed against the City of Taylor insufficient to show a policy or custom where there were no comparative statistics of similarly sized cities and there was no information about the underlying facts); *Mettler v Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999)("[T]he mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force.").

Here, the facts underlying the prior suits and complaints and how they compare to Plaintiff's allegations are unknown. Also, there is no evidence of: how the number of complaints and suits filed compares with similarly sized cities; how many of the claims asserted in the lawsuits were substantiated, and; what action Defendant took in response to substantiated claims in the lawsuits or in the majority of the "sustained" citizen complaints. In short, without sufficient evidence to put the prior lawsuits and

complaints into context, there is no basis for the trier of fact to infer a pattern and practice of illegal conduct or that Defendant was on notice of the same.

Lastly, Plaintiff cannot rely upon the August 2007 incident to satisfy his burden. Plaintiff cites *Henry v County of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997), for the proposition that "post-event" evidence may be admitted to prove the municipal policy in effect at the relevant time. For instance, the *Henry* Court found that evidence two other individuals were subjected to substantially similar civil rights violations shortly after the plaintiff filed suit was "not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but [was] highly probative with respect to that inquiry." 132 F.3d at 519. The Court reasoned that "[w]hen a county continues to turn a blind eye to severe violations of inmates' constitutional rights--despite having received notice of such violations--a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference." *Id* (as amended at 137 F.3d 1372). Plaintiff, likewise, asserts that the investigation into his complaint was inadequate and illustrates Defendant's tolerance for Fourth Amendment violations by its officers.

It appears the Sixth Circuit has not addressed this issue. However, even if the Sixth Circuit would allow the admission of "post-event" conduct as evidence of a policy or custom, Plaintiff has not in the first instance presented evidence that Defendant had actual or constructive notice of the prior incidents of which he complains or that similar claims were made in prior lawsuits and/or citizen complaints. The August 2007 incident is the only one Plaintiff has proven he reported. But, he cannot rely solely upon that incident or the investigation of it to establish his claim, because it is settled that

municipal liability cannot be based on a single instance of misconduct. *See Thomas*, 398 F.3d at 432. Indeed, the *Thomas* Court affirmed summary judgment where plaintiff argued that the police department's mishandling of his excessive force complaint (wherein it found the officer's actions to be justified) was proof that the police department had an unwritten policy of failing to discipline officers who used excessive force, but failed to show any other instances where defendants failed to conduct a proper investigation. The Court stated that "the plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference." *Id* at 433.

Defendant's Motion for Summary Judgment on Counts VI and VII is granted.

**B.     Count VIII--Interstate Travel**

In Count VIII, Plaintiff alleges that the alleged detentions interfered with his right to interstate travel. There is a federal guarantee of interstate travel which "protects interstate travelers against two sets of burdens: 'the erection of actual barriers to interstate movement' and 'being treated differently' from intrastate travelers." *Bray v Alexandria Women's Health Clinic*, 506 U.S. 263, 276-277 (1993)(*quoting Zobel v Williams,* 457 U.S. 55, 60, n. 6 (1982)). However, inasmuch as Plaintiff only claims that he was detained for brief intervals within the City of Detroit, there is no evidence to support his claim that his right of *inter*state travel was restricted or impeded. At most, Plaintiff's testimony establishes that his *intra*state movement was limited for brief periods. However, "a purely intrastate restriction does not implicate the right of interstate travel." *Id* at 277.

Defendant's Motion for Summary Judgment on Count VIII is granted.

### C. Counts I through IV--Fourth Amendment Violations by Officers

In Counts I through IV, Plaintiff alleges that nine unnamed Detroit Police officers violated his Fourth Amendment rights between April 17, 2003 and August 2004. Discovery is now closed, Plaintiff has not moved for amendment of his Complaint to name those "John Doe" Defendants, and the three-year statute of limitations on his claims against them expired. *See McCune v City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988)("Michigan's three year statute of limitations for personal injury claims . . . governs section 1983 actions when the cause of action arises in Michigan."). Therefore, the Court, *sua sponte*, dismisses Counts I through IV with prejudice.

### V. CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED** on Counts VI through VIII. Counts I through IV are also **DISMISSED WITH PREJUDICE**. Plaintiff's only remaining claim is against the tenth "John Doe" Defendant in Count V.

**IT IS ORDERED.**

                                                    s/Victoria A. Roberts
                                                   Victoria A. Roberts
                                                   United States District Judge

Dated: March 26, 2008

> The undersigned certifies that a copy of this document was served on the attorneys of record and Danny Cross by electronic means or U.S. Mail on March 26, 2008.
>
> s/Linda Vertriest
> Deputy Clerk